Prior to February 3rd, 2020, Mr. Adams had never been convicted of a crime, but beginning on February 21st, 2019, he made some poor decisions, which he regrets terribly. And as a result of those poor decisions, he pled guilty to distribution of child pornography. He received several sentencing enhancements in connection with this offense. For instance, he received a five-level enhancement because the offense involved at least 600 images. He also received a four-level enhancement because the images portrayed sadistic or masochistic conduct. And he received a two-level enhancement because the images portrayed a previous amount of It must be noted that absent these enhancements, his guideline range would have been 60 months. Actually, it would have been about 30 to 37 months, but for the statutory minimum of five years, it would have been 60 months absent these sentencing enhancements. And even though these sentencing enhancements catapulted his Blippi guideline range of 60 to 31 months, the court went even further and imposed a 60-month upper variance and sentenced him to 180 months based on his belief that Mr. Adams was willing to have sexual intercourse with an eight-year-old. Considering it could hardly be argued that anyone convicted of distributing child porn doesn't have a sexual interest in children and considering that Mr. Adams' guideline range included an enhancement because the offense involved a prepubescent minor younger than 12, the guideline range already accounted for the notion that Mr. Adams was willing to have sex with an eight-year-old. Well, is that really true? Don't the guidelines really contemplate the possession and distribution of images, not people who are willing to be hands-on offenders? I mean, doesn't that move it into a different class, at least arguably for the judge to consider all of the sentencing factors in the guidelines and in the statute? I believe because, as I stated, Judge Erickson, that anyone convicted of this offense, I think they are willing to have sexual intercourse with a child. Well, I'm not sure that's true. I've presided over hundreds of child pornography cases as trial judge. I'm just telling you, there's a certain cadre of cases where you've got a person who's on the autism spectrum who collects child pornography and trades them and they're sitting in their mom's basement and those cases are out there. There's another group of people that there doesn't appear to be any inclination anywhere to be hands-on offenders, right? And then there's a group of people for which there is actual evidence that they are either hands-on offenders or that they're willing to be hands-on offenders. And isn't that something the trial judge can take into consideration in sentencing? I think that it is fair for the child judge to take that into consideration. But I was just saying that it seems the majority of those who are convicted of distributing child porn might have a sexual interest in children, absent the, I'll say, mental deficits. So, I'm sorry, to sentence Mr. Adams, Mr. Adams has never been arrested for anything in his life prior to May 17, 2019. So to sentence him to 180 months in prison, which would have been the statutory minimum if he had a prior conviction for sexual abuse in a minor, and which is already 60 months above the inflated guideline range. To oppose such a hard sentence on this man, this client, based on the coarse belief that he was willing to have sex with a minor, a minor who didn't exist, who was merely a creation of the FBI's imagination, it was just merely, it was simply unreasonable. And also defense, it acknowledged, we touched in the brief that the court then considered mitigating factors such as Mr. Adams' military history, his employment, his consistent employment, and his lack of criminal history. The defense, we acknowledged that the court expressed that it considered these factors, but it didn't give these factors the weight they deserve, considering that they go to the issue of rehabilitation, not rehabilitation, I'm sorry, recidivism. These factors suggest that he's not going to recidivate. As such, Mr. Adams respectfully asked that this court vacate his 180-month prison sentence. And also, along with imposing this unreasonable sentence, the court imposed special conditions which are unsupported by the record. Counsel, weren't those conditions waived, or the right to appeal those conditions waived in this case? No, Chief Justice Smith, we don't- Why then does his plea waiver not apply? I don't think the government, well, the government did meet its burden of proving that he waived the special conditions of supervised release. Specifically, his plea agreement or appeal waiver, he reserved the right to appeal a sentence if the court imposed a above-guideline sentence. Special conditions include the- Sorry, I'm sorry. But did that include the special conditions of supervised release? I believe that him reserving the right to appeal the sentence, yes, it includes the special conditions of supervised release. Because this court has repeatedly said that special conditions aren't part of the sentence. So him reserving his right to appeal the sentence if the court imposed a above-guideline sentence, he reserved the right to appeal his special conditions of supervised release. And that's the government. They're the ones who drafted the plea agreement in the appeal waiver. They could have included a provision where he expressly waived his right to appeal the special conditions of supervised release. Say on condition 16, the government seems to say in its brief that it more or less agrees with you that the limitation about such material or entertainment is limited to establishments that have the primary purpose of selling or displaying that kind of material. What are you asking us to do on that? Do you just want that condition clarified so that the residual clause, so to speak, is limited in that way? That would be preferable. Preferably, we would prefer that you vacate the special condition, but if you limit it, I think it might be more tailored. Yeah. Oh, I see. You're challenging the whole thing. You think he should be able to go into adult bookstores and strip clubs and so forth, but alternatively you want it limited so he can go into a gas station that happens to sell magazines or something. That's correct, Judge Cogleton. Thank you. Thank you. The special conditions that's more challenging, as you're aware, are special conditions 15, 16, 23, and 24. 15, 16, 23, they all go hand-in-hand, so I'll begin with special condition 24, which bars Mr. Adams from having any direct contact with minors, including his own children, without the prior approval or probation. This contact includes written communications. It is our position that this condition infringes upon his constitutional right to have interactions or familiar relationships with his children, and he has five children. And also the caveat with him not being able to write his children, I think it is more restrictive than necessary to protect his children, because how does preventing him from writing his children further the goals of sentencing? I mean, if the children don't want to receive letters from him, they're more than welcome to refuse those letters, not to open those letters, not to accept those letters. But preventing him from writing his children, I believe it might hinder his rehab and have a negative effect on his mental health. Now this wouldn't apply while he's incarcerated, right? This would only be after he's released. So he could write to the children for the 180 months that he's incarcerated? That I'm not sure of. Did I get that? Yeah, 180. Well, it's a special condition of supervised release, so wouldn't it follow that it only applies once he's on supervised release?  I agree with that. Oh, you think? Yeah, I believe that. That's my opinion. Okay. It could be interpreted that way. I'll say that. All right. Okay. The judge said that, also the judge, as I understand it, said he needs to undergo this examination. Yes, the cycle. Once he's released. Yeah. Yes. And that depending on how that comes out, the judge might lift this restriction on communicating with his own children. Yeah. Also, touching on that- What's wrong with that? What's wrong with that? As long as the judge does that at the beginning of the process, if the exam were to show he is a threat to his own children, what would be wrong with keeping this restriction in place? I think on the record, the judge imposing the condition on the record as it is, I think it's not supported by the record because there's no indication that he would ever abuse his own children or that he has sexual interest in his own children. Well, you think there's a way to distinguish between eight-year-olds who are not his children and those who are? I'm sorry. What do you mean by that? Well, I mean, how do we know that his interest in minors is limited to non-family members? I guess we wouldn't know for certain. No one can know for certain because we can't read his mind, but I don't think he's ever been accused of sexual abuse in his children or attempting to sexual abuse his own children. Oh, I think my time is up. I'm sorry. Thank you, Ms. Talley. Thank you. Ms. Jegley? Yes, Your Honor. I'm representing the United States for the Eastern District of Arkansas. The United States is asking the court to grant the United States motion to dismiss the appeal in part concerning the special conditions. Mr. Adamson, it's because the appellate waiver limits his ability to appeal to the issue of the imposition of an above-guideline sentence of imprisonment. How does it limit it to that issue? It says that if that condition is met, he reserves the right to appeal the sentence. Why doesn't the sentence encompass the entire sentence once the condition is triggered? Well, Your Honor, the United States agrees that special conditions are a part of the sentence. However, the plea waiver in this plea agreement, it's paragraph four specifically states two specific situations, one of which is a claim of prosecutorial misconduct, and the second is his sentence if he makes a contemporaneous objection to a sentence that is imposed that is above the guideline range. And so, we concede that he is allowed to appeal his sentence as it pertains to the above-guideline range of imprisonment, but not as to the special conditions. Why is that? I mean, in this particular case, Mr. Tarver said, I object to the sentence as being unreasonable, and I'd like to see the special conditions because nobody's given them to me yet. And I think that's at what, page 12 of the sentencing transcript, and he goes on after that to say, I also specifically object to the condition that Adams not be able to have contact with his own children, either written or in person without the court's permission. I think that requiring him to undergo psychosexual assessment and that assessment being completed, and we should be able to have contact with his own children, blah, blah, blah, and he goes on even after that. So, why aren't those issues all preserved? Well, Your Honor, I don't think our position is that they're not preserved. He certainly did make an objection. I think the issue is, is what specifically he can bring on appeal and- Well, he objected to the sentence, right? He said, I think the sentence is unreasonable. And he said, the length and the conditions. And he said he hadn't even seen the conditions, right? And now you're saying somehow he waived them, even though he'd never seen them? Right, Your Honor. Our position is that the language of the waiver is restricted to the above-guideline sentence. And part of the concern we have about not enforcing that waiver is that it does create a disparity because had Mr. Adams received a sentence that was within the guideline range or even below, he would not be able to appeal. But the waiver is strictly construed against the government. It says what it says, right? Yes, Your Honor. And so it could create all kinds of sort of anomalies that seem on their face to be unreasonable or uncertain or irrational. But if you agree to it, you agree to it. As long as it doesn't violate the Constitution or the other federal law, it's fine, right? I would agree with that. But I just, our position is that it was restricted to his term of imprisonment and not his special conditions. However, I mean, at the court- The concern is whether it was drafted quite right to accomplish that because it said he reserves the right to appeal the sentence if the sentence is above the range. It could have said he reserves the right to appeal the length of his prison sentence or Yes. Written more broadly to say he reserves the right to appeal the sentence, which may bring in everything once the condition is met. I understand, Your Honor. And I mean, that is certainly something for this court to consider. I mean, if the court decides ultimately not to enforce the waiver in this particular case, we are asking the court to affirm the special conditions that were imposed as part of the sentence because each of the restrictions were discreet and reasonably related to the factors included in 18 U.S.C. 3553A. And finally, we are asking the court to affirm the above guideline sentence imposed because it is substantively reasonable where it was undisputed that Mr. Adams expressed his intent and made arrangements to rape a purported eight-year-old girl in front of her mother. What do you think we should do with number 16 on the bookstores and so forth? I thought your brief said you basically agreed with the defense position that the catch-all language is limited to establishments that primarily deal in those kinds of materials, and you didn't think it should pick up the convenience store that happens to sell some magazines in the back corner. Did I read you correctly on that? Yes, Your Honor. We argued that the condition was clearly intended to prohibit him from entering businesses where the primary purpose would be to obtain or view pornography, and it's not designed to prevent him from entering a business whose primary purpose is directed to other types of retail. And I think it was read together with the special condition prohibiting his obtaining and viewing pornography. So I think we should order that it be modified to read in that way then, so that it's limited to a place that has that as the primary purpose. I think, as I said before, special condition 15 and 16, when read together, I think are clear enough, but I do think that is an option for this court to consider as to remand to modify that condition if it feels that's appropriate. The upward variance in this case, I would just like to address that regarding the guidelines, the argument was made that the guidelines take into account the behavior of Mr. Adams when he made arrangements to meet up with an eight-year-old and rape that eight-year-old in front of her mother. There has been no citation to any particular guidelines section which would account for that, and I would direct this court to its decision in Hummingbird, in which even if the guidelines were to take into account the nature and circumstances of this offense does not mean that further consideration is an abuse of discretion, and the court can take into account those factors in calculating a guideline range and can form the basis of a variance. And so, the other part of Ms. Talley's argument that I'd like to address is that the district court did hear argument and specifically referenced the argument from Adams' counsel about his steady employment, about his military service, and about his conduct in pretrial detention, and that's at page six and seven of the sentencing hearing transcript, and the court also referenced the pre-sentence report, which includes Mr. Adams' lack of criminal history, and the court specifically said, I considered the pre-sentence report in arriving at this sentence of imprisonment. So, the district court also made reference to the 3553A factors and correctly considered all of the relevant factors in determining what sentence was appropriate for Mr. Adams here, and so it was well within its discretion to find that Mr. Adams expressed intent in his actions to arrange to rape an eight-year-old outweighed any mitigating factors. Counsel, this is Judge Smith. Do you have any similar case where a fictitious victim has been used in a case that results in an enhancement of a sentence based on an assessment of what the defendant's intent would be? No, Your Honor. I don't have a specific case for the court on that particular issue. I think the relevant factor here to consider is that Mr. Adams believed that he was communicating with someone who had an eight-year-old child and that was willing to allow him to meet that child for purposes of rape, and so the court properly… I understand that. I was just asking if you had any similar cases where that's been used as an aggravator. No, Your Honor. I don't have anything at this time. I'd be glad to supplement if the court would like. Please do. Okay. And if there's no other questions, I would rest on the arguments in the brief. Thank you. All right. Thank you, Ms. Jigley. Ms. Talley, I believe we used up your allotted time during the initial argument. Was there something that you heard from the government that you felt was a strong obligation to inform the court in response to? You're muted. Your microphone's muted. Okay. Can you hear me? Yes. Okay. I think I discussed everything in the opening. I don't think the government said anything that warrants a reply. All right. Thank you, Ms. Talley. Thank you. The court appreciates both counsel for your presentation to the court this morning, and    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you, Ms. Talley.